1          IN THE UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
2                    TAMPA DIVISION

3

4    UNITED STATES OF AMERICA,        )
                                      )
5                   Plaintiff,        )
                                      )
6                                     ) Case No.
              vs.                     ) 8:24-CR-00136-RAL-TGW
7                                     )
                                      )
8    ARTEMIO MARTINEZ-GINES,          )
                                      )
9                   Defendant.        )

10

11

12   _____

                     DETENTION HEARING
13    BEFORE THE HONORABLE CHRISTOPHER P. TUITE
            UNITED STATES MAGISTRATE JUDGE
14
                     MARCH 13, 2024
15                    11:11 A.M.
                     TAMPA, FLORIDA
16   _____

17

18

19

20

21          Proceedings transcribed via courtroom digital audio
     recording by transcriptionist using computer-aided
22   transcription.
     _____
23
                   DAVID J. COLLIER, RMR, CRR
24            FEDERAL OFFICIAL COURT REPORTER
             801 NORTH FLORIDA AVENUE, 7TH FLOOR
25                TAMPA, FLORIDA  33602

1   **APPEARANCES:**

2

3   **FOR THE GOVERNMENT:**

4

5           Karyna Valdes

6           United States Attorney's Office

7           400 North Tampa Street, Suite 3200

8           Tampa, Florida  33602

9           (813) 274-6000

10

11

12  **FOR THE DEFENDANT:**

13

14          Yamilette Alvarez

15          Federal Public Defender's Office

16          400 North Tampa Street, Suite 2700

17          Tampa, Florida  33602-4726

18          (813) 228-2715

19

20

21  INTERPRETER:   Victoria Spellman

22

23

24

25

```
1                    P R O C E E D I N G S

2                      - - - o0o - - -

3          THE COURT:  Good morning, everyone.

4          Madam Clerk, if you could please call the case.

5          COURTROOM DEPUTY:  United States of America versus

6  Artemio Martinez-Gines, Case Number 8:24-MJ-1358-CPT.

7          THE COURT:  If I could please have the appearances of

8  counsel for the record, beginning with the Government.

9          MS. VALDES:  Good morning, Your Honor.  Karyna Valdes

10 for the United States.

11         THE COURT:  Good morning.

12         MS. ALVAREZ:  Yamilette Alvarez, Assistant Federal

13 Defendant.  Good morning, Your Honor.

14         THE COURT:  Good morning as well.

15         And good morning to you, Mr. Martinez-Gines.

16         THE DEFENDANT:  Good morning.

17         THE COURT:  You will see that there's a microphone

18 located close to you there.  If you could move that microphone

19 closer.

20         Ms. Alvarez, it appears that we need the services of

21 an interpreter this morning.  Do you move for the use of a

22 translator in this proceeding?

23         MS. ALVAREZ:  Yes, Your Honor.

24         THE COURT:  All right.  The Court had continued this

25 matter on the issue of the defendant's detention or release so
```

1　that a full presentence report could be prepared.  One has been

2　since compiled.  I'll ask of both counsel if they've reviewed

3　that.

4　　　　　Ms. Valdes?

5　　　　　MS. VALDES:  Yes, Your Honor.

6　　　　　THE COURT:  And Ms. Alvarez?

7　　　　　MS. ALVAREZ:  Yes, Your Honor.

8　　　　　THE COURT:  Okay.  Are the positions of the parties

9　still the same?

10　　　　　MS. VALDES:  Yes, Judge.

11　　　　　THE COURT:  Okay.  Ms. Alvarez?

12　　　　　MS. ALVAREZ:  Yes, Your Honor.

13　　　　　THE COURT:  All right.  Ms. Valdes, I'll begin with

14　you.

15　　　　　MS. VALDES:  Thank you, Your Honor.

16　　　　　The primarily -- the primary argument for the

17　Government for detention, Your Honor, is, again, he's been

18　served with an ICE detainer.  If he were to be released by this

19　Court, he could be picked up and put -- placed in removal

20　proceedings, that would render the Government's case moot.

21　This is not the first time he's been placed in a removal

22　process.  In fact, this will be the third time.

23　　　　　Also, as a secondary argument, under 18 U.S.C.

24　3142(f)(2) he is, in the Government's view, a serious risk of

25　flight.  He has four children according to the report, the

1    Pretrial Services Report.  He has four children in Mexico.  It

2    seems like he does have some finances and would have the means

3    to abscond and return to Mexico.

4         Agent Hemberger was kind enough to run an NCIC report

5    for me before I arrived here this morning.  There is a failure

6    to appear in Hillsborough County Court.  He was arrested for

7    that on February 11th, 2021.  That's just another element for

8    Your Honor to consider, that he has promised to appear before a

9    court before and has failed to do so.  Then, of course, there

10   is the fact that he's been removed twice from the United States

11   and has reentered the United States.

12        And as a third argument, Your Honor, just it's the

13   Government's position that this Court should consider his

14   criminal history.  He has been arrested on many offenses over

15   an extended period of time.  He has been convicted of some of

16   those offenses, including for driving under the influence.  He

17   was given a withhold of adjudication on robbery by some

18   snatching, possession of cocaine, possession of drug

19   paraphernalia.  Again, he's been subject to removal and has

20   been removed twice from the United States.  He received a

21   withhold on property damage, no valid driver's license, and two

22   other driver's license offenses, showing that he has been

23   driving without permission here as early as last -- as 2023,

24   also in 2022 and in 2020.  And for those reasons the Government

25   is seeking detention in this case.

```
 1              THE COURT:  Thank you, Ms. Valdes.

 2              Ms. Alvarez?

 3              MS. ALVAREZ:  Your Honor, as to Ms. Valdes' first

 4   argument in regards to the ICE detainer, I will submit,

 5   Your Honor, that there is case law that states that that is not

 6   one of the factors to be considered under the Bail Reform Act

 7   and that a person who is not a U.S. citizen should not be held

 8   in custody under the Bail Reform Act due to an ICE detainer.

 9              It also -- there is also case law that states that

10   between -- that this Court should not be concerned or should

11   not get involved in the arguments between the two agencies, the

12   prosecuting agency and the removal agency.

13              As to her concern of Mr. Martinez being a serious

14   risk of flight regarding his children in Mexico, he does have

15   four children in Mexico, he also has his wife currently here

16   eight months pregnant who he supports.  He does send money to

17   Mexico monthly and he speaks with them on a regular basis.

18   She -- they also state that Mr. Martinez have returned to the

19   United States and has been removed on multiple occasions.

20   I will submit, Your Honor, that for a serious risk of flight

21   that's not an element to be considered, only because he

22   obviously wants to be in the United States, he does -- he

23   continues to come, which is why they removed him, therefore

24   he's not a serious risk of flight in trying to --

25              THE COURT:  Let me just have you pause for a moment
```

1  though.  It's not a reentry -- or a leaving of the country and

2  a reentry just in the abstract, there's a case pending against

3  your client now for which there is, it appears, strong evidence

4  from the Court's review of the Complaint, which is one of the

5  3142(g) factors.  So the -- so the situation is not that your

6  client simply wants to remain in the country, it's that he has

7  a pending case, as I mentioned, with strong evidence, and that

8  then raises the specter of whether it makes sense for someone

9  in that position to flee the country, remain in Mexico for a

10  period of time until things, if you will, cool down, and then

11  return to the country.  He's shown an ability to get in and out

12  of the country, certainly to get into the country, without

13  detection, and then resume living in the country, now with the

14  case in his rearview mirror unless somebody finds him or

15  there's a warrant, and as time passes presumably that

16  diminishes that prospect.

17           So I understand the argument about wanting to remain

18  in the country, but it's not that simple.

19           MS. ALVAREZ:  And, Your Honor, just for

20  clarification, are -- is Your Honor speaking of this particular

21  case that is pending, the illegal reentry?

22           THE COURT:  Yes.

23           MS. ALVAREZ:  Okay.  While those may be concerns,

24  I will submit, Your Honor, that Mr. Martinez has a pregnant

25  wife who is about to give birth next month.  He does have ties

1   to the community.  He has family here.  Actually his

2   sister-in-law is here in the courtroom on his behalf.

3           THE COURT:  Let me just talk about the child,

4   for example, or the impending birth of the child.

5           So if the evidence is strong, and I don't hear it to

6   be contested otherwise, there is a substantial likelihood of a

7   conviction and a jail term, at which point the defendant would

8   be removed from his family in any event.  As he sits in Federal

9   custody right now, is it not the case that if he were to be

10  convicted, and I'm not assuming that would happen, but if he

11  were to be convicted, wouldn't he get credit for the time he's

12  now in custody?

13          MS. ALVAREZ:  Yes, Your Honor, I would assume.

14          THE COURT:  Okay.  So if he gets credit for the time

15  he's in custody and he is convicted, he's going to be -- or

16  there's a substantial likelihood of conviction here, he's going

17  to be removed in that instance from his family in any event, so

18  it's different than -- and by the way, he's going to be removed

19  one way or the other, so it's either going to be after the term

20  of incarceration, if he's convicted, and I emphasize the word

21  "if," or he's going to be removed in advance of that.

22          MS. ALVAREZ:  And we understand that.  However --

23          THE COURT:  So how does that impact his wife?  So if

24  he's removed to Mexico, he can't -- he's not supposed to

25  illegally renter the country, so he's going to be removed from

1   the baby that way as well, unless it's going to incentivize him

2   now to enter the country unlawfully.

3           MS. ALVAREZ:  Well, Your Honor, first, he has not

4   been formally charged with the crime.  It's still a Complaint.

5           THE COURT:  That's a formal charge for which there's

6   been a probable cause finding, because there was a waiver of

7   the preliminary hearing, that constitutes a formal charge.

8           MS. ALVAREZ:  Okay.  The concern right now,

9   understandably -- I understand all the arguments that

10  Your Honor has mentioned; however, Mr. Martinez right now and

11  his wife are concerned because of her impending birth of her

12  child.

13          THE COURT:  No, but -- I understand that.  Let me

14  just go back, if I could, to the concern, how do you address

15  the fact of the strength of the evidence here and the prospect

16  of a conviction and either way his removal?  So he's going to

17  be taken away from his wife one way or the other, unless she

18  moves with him to Mexico, or -- or, in addition, I should say,

19  he's going to spend a time in custody, which he would be away

20  from the baby.  So I understand you're making an argument in

21  the moment, but if you could address why the Court's concern as

22  I've articulated is not a fair one.

23          MS. ALVAREZ:  Well, Your Honor, I would say that,

24  again, because of her upcoming birth, they can -- if he's

25  released, he can not only financially help in the meantime

1   while the prosecutor goes through the case, he knows that he

2   most likely will be convicted, we have spoken about that;

3   however, their concern right now is financial availability to

4   the mother, whether that is saving money so she can then move

5   to Mexico, if she has family in Mexico, with their children

6   while he does his time here and then once he's done and he gets

7   deported they meet in Mexico, or if he's just trying to save

8   the money for them so she can sustain herself and the baby in

9   the meantime regardless of what happens with Mr. Martinez.

10          I think right now he -- the detention is in regards

11  to a serious risk of flight.  I don't think there is sufficient

12  facts to determine that Mr. Martinez would not submit himself

13  to the Court, that he would not show up to court.  He has

14  family members here, he has his wife here, and I think right

15  now their main concern is providing financially for her.  Once

16  she -- the case goes however it's going to go, if he is found

17  convicted and he does have to do time, then obviously she would

18  have to determine whether she's going to be staying here with

19  her family members helping or if she's going to be going to

20  Mexico with her child, you know, and moving over -- over there

21  until Mr. Martinez does his time and be deported to Mexico.

22          THE COURT:  When is this case scheduled for trial?

23          MS. ALVAREZ:  I am not sure that it has been.  Maybe

24  for the May term, if I'm not mistaken, Your Honor.  April 15th?

25          THE COURT:  Now that I think about it, because it is

1  a Complaint, it is not on a trial calendar.

2          MS. ALVAREZ:  That's -- okay.  I may have confused

3  that with my other case --

4          THE COURT:  That's okay.

5          MS. ALVAREZ:  -- Your Honor.

6          THE COURT:  That's okay.  It was a poor question.

7          Let me ask, Ms. Valdes, just on that end, what is the

8  speed with which these cases move through the system?  My sense

9  of it is that they're fairly quick.

10          MS. VALDES:  In my experience, Judge, they do move

11  fairly quickly, usually from six months to a year, and for a

12  Federal case that is quite quickly.  It just kind of depends on

13  if there's any complications or if the defense is contemplating

14  a plea or wants to explore other options, but in my experience

15  I've seen, I think, as quickly as four to six months and as

16  long as a year.

17          THE COURT:  And are these typically assigned to

18  Judge Lazzara?

19          MS. VALDES:  Yes, Your Honor, they are.

20          THE COURT:  Okay.  Thank you, Ms. Valdes.

21          My apologies, Ms. Alvarez.  I know that you're a

22  relative newcomer to the District and I just wanted to get a

23  sense of the timeframe.

24          MS. ALVAREZ:  I appreciate that, Your Honor, and

25  while, for the Federal system, six months to a year may be

1  considered fast, right, for somebody that's sitting in jail,
2  waiting for that case to be determined, especially when they
3  are going to have a newborn and they could be out in the
4  community supporting their family and showing up to court and
5  providing information to their defense, for their defense,
6  I think that six months to a year gives them plenty of time to
7  plan for the future if he is convicted and deported.
8          And as to the criminal history that Ms. Valdes did
9  mention that happened, I believe, in 2008, the robbery, he
10 was -- Mr. Martinez was about 19 years old.  Since then no
11 real -- and I won't say "real," right, but no serious crimes
12 have been committed besides the driving with no driver's
13 license, which he has shown up and pled guilty to them.  So he
14 is capable of showing up to court, he has been showing up to
15 court before, and there will be no difference, that he will be
16 showing up to court for this particular case once it is set for
17 court dates, Your Honor.
18         And as to the ICE detainer, again, Your Honor, one
19 more argument is that if ICE was really concerned of deporting
20 him prior to prosecution, they would have just removed him once
21 they had their hands on him; however, they provided the
22 information to the prosecution -- prosecuting agency to
23 prosecute Mr. Martinez.  I believe that that goes to -- that
24 goes to show that ICE is not in an immediate -- or wanting to
25 deport Mr. Martinez prior to him finalizing this prosecution

1    case.

2              THE COURT:  Okay.  Thank you, Ms. Alvarez.

3              Ms. Valdes, anything further?

4         MS. VALDES:  I think I've covered the points I was

5    making, Your Honor.  Thank you.

6              THE COURT:  Thank you.

7         Ms. Alvarez, just so I have a sense of it, as I've

8    indicated, I think, to your office many times, the statute,

9    Bail Reform Act, provides for written findings and statement of

10   reasons.  I intend to go through this with some detail, but I

11   want to see if I can get a sense on the -- at the outset as to

12   whether the Court is going to be required to reduce that to

13   writing or it can rely on its recitation here and simply

14   reference that in any subsequent order.

15        MS. ALVAREZ:  Your Honor, if I may request a

16   written --

17             THE COURT:  Okay.

18        Mr. Martinez, these cases are difficult for the Court

19   because they involve a number of different elements, both

20   factual and legal.  On the legal side of things, the courts at

21   this point, at least in the Circuit, the area where this

22   District lies, has not decided exactly how to apply the idea

23   that a defendant is a flight risk.  There are different

24   interpretations of how that is to be applied in the general

25   circumstance.

1        The Court cites in this regard *United States versus*
2   *Ailon-Ailon*, 875 F.3d 1334; and in comparison *United States*
3   *versus Ramirez-Hernandez*, 910 F.Supp.2d 1155, and *United States*
4   *versus Idais*, 2005 Westlaw 1527715.  Divergence of opinion
5   there as to whether the idea of a flight risk is something done
6   of a defendant's own free will, in other words volitionally, or
7   if it's a risk of non-appearance, which suggests that
8   non-appearance is not driven by whether the defendant controls
9   it.

10       For purposes of my analysis here I will assume,
11  without deciding that the risk of flight pertains to a
12  volitional act by the defendant, but will note, as I have
13  referenced, that there are cases, including in this Circuit,
14  that hold otherwise.  Even with that though, Mr. Martinez, I'm
15  going to direct that you be detained.

16       The Court has to look at a number of factors here in
17  deciding the detention issue.  The first is the nature and
18  circumstances of the charged offense.  Here what's alleged is
19  an illegal reentry after deportation, which as I understand it
20  involves not only one prior deportation but another, so it's an
21  immigration offense which shows continued illegal activity by
22  statute.  In other words, you're coming into the country on
23  multiple occasions even after having been deported, and
24  apparently without any effort to make your presence here be
25  sanctioned by the United States Government by going through an

1    appropriate process.  I recognize the temptation that exists

2    for individuals not to do that, but it's against the law in the

3    United States to proceed as you have done.

4            I also note that there is an Immigration detainer

5    here.  I understand Ms. Alvarez's argument that the presence of

6    an ICE detainer alone is not dispositive, but there are a

7    multitude of cases that deem the presence of an ICE detainer,

8    which will require removal at some point, to be a consideration

9    for the Court in rendering its assessment of the facts before

10   it, including, as I'm pointing out here, the nature and

11   circumstances of the offense.

12           The Court cites *United States versus Nieves*,

13   11 F.Appendix 6, it's a First Circuit decision, 2001;

14   *United States versus Veliz-Hernandez*, 2022 Westlaw 1202401 at

15   3; *United States versus Garcia-Enriquez*, 2015 Westlaw 5159129;

16   and *United States versus Dozal*, 2009 Westlaw 873011.  All of

17   those cases take into account the fact of an ICE detainer as a

18   factor or consideration for the Court to evaluate when deciding

19   the matter of detention.

20           The next factor is the weight of the evidence.  It's

21   been acknowledged by Ms. Alvarez, to her credit, that the

22   evidence here is strong and presents, I think as even the

23   defense has acknowledged, a substantial likelihood that the

24   defendant will be convicted.  That has some consequence here

25   because, as the Court has intimated by its questioning, a

1    number of the arguments made here are undercut by the fact that

2    the defendant's situation as it relates to his family is not as

3    strong as the defendant maintains.

4         There are a number of different scenarios that can

5    ensue as a result of this proceeding, one of which is the

6    defendant is acquitted but is removed, unless he were to flee

7    upon acquittal, so he would end up in Mexico and would be

8    required to stay there unless he were to reenter the country

9    lawfully, which would be a long process, or illegally, which

10   the Court does not want to incentivize; or he goes through with

11   this proceeding and in light of the substantial likelihood of

12   conviction based on the acknowledged strength of the evidence,

13   he will be removed from his family in any event and then

14   removed.

15        That analysis alone presents a risk of flight,

16   because it would encourage any defendant in that position,

17   knowing of their likelihood -- a strong likelihood of an

18   impending removal, and with a baby on the way, to flee the

19   country or to go to another area of the country where they

20   could blend in until the proceeding withered on the vine, if

21   you will, and then return to be with the family, because

22   irrespective of how the defendant decides to proceed here, he's

23   going to find himself one way or another in Mexico upon removal

24   pursuant to the ICE detainer and away from his family and

25   unable to be with them, at least in the immediate future.

```
 1              So you're very capably represented here by
 2    Ms. Alvarez, but that concern that the Court has on risk of
 3    flight hasn't been addressed here, particularly in light of the
 4    pendency of the pregnancy, because the pregnancy -- pendency,
 5    rather, of the birth with the pregnancy, because one reading of
 6    that is it presents a flight risk if you want to be with the
 7    baby and avoid removal and/or conviction so that you can be
 8    with the baby.  There's also a cynical view that once in the
 9    country somebody could recognize that having a child might
10    elevate their ability to remain in the country because it
11    presents a consideration that the Court has to take into
12    account.  I am not going to adopt that cynical view but
13    recognize that some may.
14              The next factor is the history and characteristics of
15    the person.  There might be a situation, Ms. Alvarez, where
16    somebody who is unlawfully in the country after being
17    previously deported might be allowed by some jurist to stay
18    here, including within this courthouse, but this is not that
19    case, and one of the reasons are the history and
20    characteristics.  So I understand that the defendant's record
21    is dated, but what's not acknowledged here is the defendant has
22    strong ties to Mexico, was there for 20 years between his birth
23    in 1988 until coming to this country in 2008, and then
24    importantly for purposes of his criminal record, he returned to
25    Mexico for seven years and didn't come back to the
```

1    United States until 2017.  So he was removed in 2008, and in

2    2008 alone he racked up multiple convictions, including a

3    violation of probation where his probation was revoked, and the

4    only reason he's come to the attention of ICE, that's typically

5    how this occurs, because the Court sees this day in and day

6    out, is because he was arrested again.  I understand that case

7    has been dropped, but he does have three subsequent

8    interactions with the criminal justice system, driving without

9    a license, which of course he can't have because he's not

10   lawfully here, which means he's in all likelihood uninsured.

11        All of these things present consequences of communal

12   concern because an uninsured motorist without a license who is

13   not authorized to drive, he gets into an accident, experience

14   tells us he's likely not to want to remain there, particularly

15   if they're not lawfully in the country in the first place,

16   which presents a further flight risk.

17        The fact that he has a failure to appear as recently

18   as 2021 as proffered by the Government also cuts against the

19   request for release.

20        In addition to that, there are the defendant's strong

21   ties to Mexico, not only the timeframe that he's been living

22   there but the family he has living there as well.

23        The Pretrial Services Report which has now been

24   prepared indicates that the defendant has four children

25   residing in Mexico with whom he has weekly contact, and both

his mother and two of his sisters reside in Mexico as well,
which promotes the idea that Mexico forms a safe haven.  So
while there are other reasons for him to remain, including his
girlfriend and their daughter and son, all of whom could move
to Mexico, as Ms. Alvarez has acknowledged, and be there with
him, the family circumstance and the nature -- I'm sorry, the
history and characteristics of the defendant more broadly
counsel in favor of detention.

The last factor having to do with dangerousness,
there are decisions that have been rendered that say even under
(f)(2), where it's a flight risk analysis, dangerousness can be
considered.  The Court cites *Castellanos-Almendares*, 2019
Westlaw 3937862, for that proposition.  That factor though does
not weigh heavily one way or the other and therefore, for
purposes of my analysis, I will not take it into account.

For those reasons I'm going to direct that the
defendant be detained.

I believe I've given you the oral admonition under
the Due Process Protection Act.  And with that then,
Ms. Valdes, anything further?

MS. VALDES:  No, Your Honor.

THE COURT:  Thank you.

Ms. Alvarez?

MS. ALVAREZ:  No, Your Honor.

THE COURT:  Thank you.  We'll be in recess.

1                          - - - - -

2              (Proceedings concluded at 11:41 a.m.)

3                          - - - - -

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T E

2

3        This is to certify that the foregoing transcript of

4 proceedings taken in a detention hearing in the United States

5 District Court is a true and accurate transcript of the

6 proceedings taken by me in machine shorthand from a digital

7 audio recording and transcribed by computer under my

8 supervision, this the 23rd day of April, 2024.

9

10

11                          /S/ DAVID J. COLLIER

12

13                       DAVID J. COLLIER

14                       OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25